## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THG Holdings LLC, *et al.*, | ) Case No. 19-11689 (JTD) |
| | ) |
| Debtors. | ) |
| TRUE HEALTH DIAGNOSTICS LLC, | ) |
| | ) Adv. Proc. No. 19-50280 (JTD) |
| Plaintiff(s), | ) |
| v. | ) |
| | ) |
| ALEX M. AZAR, II, in his capacity as | ) |
| Secretary, United States Department of | ) |
| Health and Human Services; SEEMA | ) |
| VERMA, in her official capacity as | ) |
| Administrator, Centers for Medicare and | |
| Medicaid Services, | |
| | |
| Defendant(s). | |

### MEMORANDUM OPINION

Debtor, True Health Diagnostics, LLC ("True Health") filed this adversary proceeding and
Motion for a Preliminary Injunction (the "Motion") against Defendants, Alex M. Azar II (the
"Secretary") and Seema Verma ("CMS") (D.I. 3) seeking to enforce the automatic stay pursuant
to 11 U.S.C. § 362 to prevent the Defendants from withholding Medicare payments to True Health
post-petition. For the reasons set forth below, the Court will enforce the automatic stay and order
the Defendants to release all Medicare payments withheld post-petition, and continue to make
payments until the earlier of: (a) the Court's entry of a final judgment in this adversary proceeding;
or (b) the Court's entry of an order terminating the relief granted by this Order Enforcing the
Automatic Stay.

## I. BACKGROUND

True Health is a laboratory provider of diagnostic and disease management solutions. Many of the tests that True Health provides are paid for by the Medicare Program established under 42 U.S.C. Ch. 7, Subch. XVIII. Medicare is a federally funded program that provides payment for the provision of healthcare to millions of aged or disabled individuals, including the diagnostic laboratory services that True Health provides. Federal regulations permit CMS to suspend, offset, and recoup Medicare payments to providers for various reasons, including where "a credible allegation of fraud exists against a provider or supplier, unless there is good cause not to suspend payments." 42 C.F.R. § 405.371(a)(2).

On May 30, 2017, True Health received a notice of suspension of Medicare payments informing it that CMS had suspended 100% of Medicare payments based on alleged credible allegations of fraud, later reduced to 35%. On June 13, 2019, True Health received a second suspension notice imposing yet another 100% suspension of Medicare payments, once again based on alleged credible allegations of fraud.

On July 2, 2019, True Health filed an action seeking a temporary restraining order and a preliminary injunction in the District Court for the Eastern District of Texas against the Secretary and CMS (the "Texas Action"). Shortly after the initiation of the Texas Action, CMS issued two overpayment determinations to True Health: one for $19,759,699.00 for the period October 1, 2015 through January 1, 2017 and the second for $7,707,443.32 for the period May 25, 2017 through October 5, 2017. Defendants' Opp. at 3; D.I. 13. The Texas court issued a temporary

restraining order but later denied True Health's request for a preliminary injunction and dismissed the action, concluding that it lacked subject matter jurisdiction.[1]

On July 30, 2019, True Health filed for chapter 11 bankruptcy protection, initiated the Adversary Proceeding and filed this Motion seeking to enforce the automatic stay. The Defendants oppose the motion on several grounds, including that: (i) the Court lacks subject matter jurisdiction to enforce the automatic stay; (ii) even if jurisdiction exists, withholding Medicare payments is an exercise of CMS's police or regulatory power; (iii) the Medicare payments are not property of the Debtor's estate; (iv) True Health has not shown it will suffer irreparable harm; (v) the Defendants' interest in protecting the Medicare system outweighs any harm to True Health; and (vi) enforcing the automatic stay would not serve the public interest. The Court rejects each of the Defendants' arguments.

## II.  JURISDICTION

The Defendants contend that the Court lacks subject matter jurisdiction because True Health's claims arise under the Medicare Act, and sections 405(h) and 1395ii of Title 42 bar the Court from entertaining the motion until True Health exhausts its administrative remedies.[2] The Court disagrees and finds that it has jurisdiction under 28 U.S.C. §§ 157 and 1334.

---

[1] After the Texas court entered the temporary restraining order, Defendants provided True Health with notice that its review was complete and provided the estimated overpayment amounts. True Health's due process argument became moot as a result of the overpayment determinations. The Texas court then determined that it lacked subject matter jurisdiction because the remaining issues arose under the Medicare Act. *True Health Diagnostics, LLC v Azar*, No. 9:19-CV-00110-MJT, 2019 WL 3308203 (E.D. Tex. Jul. 22, 2019).

[2] Through its ongoing claim payment and review processes, Defendant, CMS, may determine that it has overpaid a provider. An "overpayment" constitutes "any funds" that a person receives or retains under the Medicare program "to which the person, after applicable reconciliation, is not entitled." 42 U.S.C. § 1320a-7k(d)(4). Further, Medicare suppliers are subject to post-payment audits of their claims and are entitled to four levels of administrative appeals, and a final level of judicial review pursuant to 42 U.S.C. § 1395ff and 42 C.F.R. § 405.900 et seq. Defendants are precluded from recouping overpayments until a

The Third Circuit addressed this very issue extensively in *University Medical Center,*

where it stated, in agreement with the Ninth Circuit, that "where there is an independent basis for

bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other

jurisdictional statutes is not required". *University Medical Center v. Sullivan,* 973 F.3d 1065, 1073-

74 (3rd Cir. 1992). The defendant in *University Medical Center* argued that the court lacked

jurisdiction because the administrative review procedures had not been exhausted. The Third

Circuit determined that the exercise of jurisdiction turned on whether the claims arose under the

Medicare Act.  Concluding that the issue of withholding Medicare reimbursement payments was

only before it because the debtor filed for bankruptcy and claimed that the withholding violated

the automatic stay, the Court found that the claim arose under the Bankruptcy Code and not the

Medicare Act.

In coming to its conclusion, the Third Circuit considered whether exercising jurisdiction

would encroach upon the Secretary's authority under section 405(h):

> we recognize that a broad reading of section 405(h) might accord with Congress'
> intent to allow "the Secretary in Medicare disputes to develop the record and base
> decisions upon his unique expertise in the health care field. The misfortune that a
> provider is in bankruptcy when he has a reimbursement dispute with the Secretary
> should not upset the careful balance between administrative and judicial review." *In
> re St. Mary Hosp.,* 123 B.R. 14, 17 (E.D.Pa.1991). However, a finding that
> jurisdiction is proper in this case does not impinge upon this authority of the
> Secretary protected by section 405(h). Indeed, there is no danger of rendering the
> administrative review channel superfluous, for there is no system of administrative
> review in place to address the issues raised by UMC in its adversary proceeding.

*Id.* at 1073.

---

supplier has completed and received a decision on the second level of administrative review. 42 C.F.R. §§
405.940, 405.942, 405.950. Only after this second level of review is completed may HHS's Secretary recoup
the overpayment. 42 C.F.R. §§ 405.960, 405.962, 405.970.

Here, just as in *University Medical Center*, the Defendants challenge the Court's ability to exercise jurisdiction, arguing that section 405(h) bars bankruptcy courts from exercising jurisdiction over Medicare claims and that such claims must be channeled through the administrative process. Defendants attempt to distinguish *University Medical Center* by arguing that the parties in that case had stipulated to the amount of the overpayment and that any substantive dispute concerning the amounts due would be handled through the administrative process. There is no similar stipulation here. Defendants' argument misses the mark. While there is no stipulation in place in this case, the Court will not be addressing whether CMS's imposition of the 2019 fraud suspension and overpayment determinations were appropriate. If the issue was the appropriateness of the overpayment determinations, the Court would agree with the Defendants that that determination should be channeled through the administrative process. However, the issue before the Court is the narrow question of whether the Defendants are in violation of the automatic stay by continuing to withhold Medicare payments post-petition for medical tests performed by True Health post-petition based upon alleged pre-petition overpayments. Because the only issue is whether the withholding of post-petition reimbursements is a violation of the automatic stay, it is not, as the Defendants argue, inextricably intertwined with pre-petition fiscal reimbursement determinations. As True Health correctly points out, those issues will be addressed through the administrative process, and that process will determine the amount, if any, of Defendants' pre-petition unsecured claim.

At oral argument, Defendants asserted that there are additional post-petition fraud and overpayment allegations that were being investigated. The Defendants failed to provide any admissible evidence to support those assertions, and, therefore, the Court gives them no weight.[3]

## III. DISCUSSION

### a. The Automatic Stay

The Court views this Adversary Proceeding and Motion as an action to enforce the automatic stay under section 362 of the Bankruptcy Code. Indeed, at oral argument, True Health's counsel stated as much on the record. Given that any ruling on the Motion turns on whether the automatic stay applies, the Court will start its analysis there.

The automatic stay is one of the most fundamental protections provided by the Bankruptcy Code, giving the debtor a breathing spell from its creditors. *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp.*, 901 F.2d 325, 327 (3rd Cir. 1990). The scope of the automatic stay is very broad. Section 362 states that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" is subject to the automatic stay. 11 U.S.C. § 362(a). Property of the estate is defined in section 541 as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well settled law in the Third Circuit that section 541(a)(1) was intended to sweep broadly to include all property whether tangible, intangible, contingent, or postponed, because "the mere opportunity to receive an economic benefit in the future is property with value under the

---

[3] Defendants attempted to introduce two declarations filed in the Texas Action after representing to the Court during a teleconference prior to the hearing that no evidence would be submitted. The Court denied the admission of the declarations based upon that representation and because the declarations were clearly hearsay.

Bankruptcy Code." *The Majestic Star Casino, LLC v. Barden Dev., Inc.*, 716 F.3d 736, 750-51 (3rd Cir. 2013). Clearly, the stay is designed to halt all collection efforts in order to allow the debtor time to reorganize.

Congress intended the automatic stay to apply to the government when acting as a creditor. Indeed, by its terms, section 362(a) applies to all "entities". Entity is defined under the Bankruptcy Code as including governmental units. 11 U.S.C. 101(15); *See also Penn Terra Ltd. V. Dept. of Envtl. Resources*, 733 F.2d 267, 272 (3rd Cir. 1984) ("the fact that Congress created an exception to the automatic stay for certain actions by governmental units itself implies that such units are otherwise affected by the stay.").

The post-petition Medicare reimbursements are indisputably property of the estate. True Health has received the reimbursements throughout the ordinary course of its business in exchange for its services as a healthcare provider. While these payments are being escrowed pending overpayment determinations, they are merely postponed payments that True Health expects to receive. Therefore, those payments fall squarely within the scope of property of the estate under section 541. In its opposition, Defendants cite two cases out of the Fifth Circuit which hold that health care providers do not have a property interest in Medicare reimbursements. However, those holdings are unpersuasive as they do not address whether Medicare payments are property of a bankruptcy estate under section 541. *Shah v. Azar*, 920 F.3d 987, 998 (5th Cir. 2019) (health care providers are not the intended beneficiaries of the federal health programs and therefore have no property interest in reimbursements); *Personal Care Prod. Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011) ("[n]othing in Texas or federal law extends a property right in Medicaid reimbursements to a provider that is the subject of a fraud investigation."). Having determined that the Medicare

reimbursement payments are property of the estate, the question becomes whether the automatic stay applies.

The police power exception is the only governmental exception to the automatic stay created by Congress, which provides that the stay does not apply to actions "to enforce such governmental unit's police and regulatory power". 11 U.S.C. 362(b)(4). This exception was intended to discourage debtors from using the bankruptcy process to evade governmental efforts to invoke its "police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare". *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3rd Cir. 2011).

To determine whether a governmental unit's actions fall within the police power exception, courts apply two overlapping tests: the pecuniary interest and public policy tests. The pecuniary interest test asks whether the government "primarily seeks to protect a pecuniary governmental interest in the debtor's property," whereas the public policy test asks whether the government is enforcing public policy as opposed to private rights. *Id.* at 139-40.

> If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable.

Id. at 140. The purpose of these tests is to get to the heart of the reasoning behind the government's actions to avoid relying on unsupported statements of intent.

Nothing in the record suggests that the Defendants' withholding of the post-petition Medicare payments is for any purpose other than protecting its pecuniary interest in property of the estate over the interests of other unsecured creditors. Moreover, nothing in the record supports

a finding that the Defendants' actions are an effort to enforce public policy. Further, as discussed above, the Defendants have not put forth any evidence that True Health engaged in fraud post-petition or that there have been any overpayments post-petition. Indeed, the Defendants in their own pleadings stated that all the alleged fraud and overpayments occurred before the petition date. Opp. at 3. The only reasonable conclusion is that the Defendants are withholding post-petition payments on account of pre-petition overpayment determinations—the exact conduct that the pecuniary interest test was designed to prohibit. Therefore, the Court finds that the Defendants' withholding of post-petition reimbursement payments is a violation of the automatic stay as it does not fall within the police power exception.

b. Preliminary Injunction

Having concluded that the post-petition Medicare reimbursement payments are property of the estate and that the Defendants have violated the automatic stay, the analysis turns to whether or not the Court should enjoin the withholding of post-petition Medicare reimbursement payments. Defendants argue that the Court cannot issue an injunction because True Health fails to meet the four-part test for issuing a preliminary injunction. The automatic stay, however, "is self-executing, effective upon the filing of the bankruptcy petition". *Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1081-82 (9th Cir. 2000). Therefore, the Court finds it is not necessary for True Health to establish each of the factors necessary to impose a preliminary injunction because the Bankruptcy Code itself establishes the basis for enforcement of the automatic stay.

Specifically, by showing that the post-petition Medicare payments are property of True Health's estate, and that none of the exceptions under section 362 of the Code apply, including the police powers exception, True Health has shown that it is entitled to relief, thus establishing a likelihood of success. There is no need for True Health to show irreparable harm because Section

9

362 does not require a showing of irreparable harm for the automatic stay to apply. *In re Minoco Group of Co., Ltd.*, 799 F.2d 517, 520 (9th Cir. 1986) ("The automatic stay comes into play upon the filing of a bankruptcy petition whether or not the debtor would suffer irreparable harm in the absence of the stay."). Similarly, Section 362 does not impose a requirement that the balance of the equities favors the debtor, nor that imposition of the automatic stay is in the public interest. Indeed, requiring such a showing would read into Section 362 requirements for application of the automatic stay that Congress did not provide for in the Code. Thus, the Court finds that True Health has established the necessary requirements for application of the automatic stay.

Even if it was necessary to establish the preliminary injunction factors for the automatic stay to apply, True Health met those requirements. The Court must consider the following factors in deciding whether to grant a preliminary injunction: (1) likelihood that the plaintiff will prevail on the merits, (2) the extent of irreparable harm to True Health, (3) the harm to the Defendants if the injunction is granted and (4) the public interest. *Reilly v. City of Harrisburg*, 585 F.3d 173, 177 (3rd Cir. 2017).

True Health has met each of the requisite factors. The likelihood of success on the merits is evident as the Court has already found that the Defendants violated the automatic stay. Also, True Health has shown that it will suffer irreparable harm if the injunction is not issued. Not only is True Health deprived of a significant portion of its revenues as a result of the withholding of payments post-petition, but without those payments True Health will be in default of its DIP financing. The result would be a loss of the ability to reorganize. The Defendants argue that True Health cannot point to a "self-inflicted" wound as irreparable harm, referencing the possibility of a default on the DIP financing if the injunction is not granted. It was the DIP lender, however, that

insisted on that term, not True Health. Indeed, exclusion of that provision would inure to True Health's benefit.

The Defendants, on the other hand, have not shown that they would suffer any harm if the injunction is granted. The Defendants argue that they have a strong interest in protecting the Medicare system from financial loss and fraud. The only evidence before the Court, however, is that the Defendants are withholding payment for the purpose of recovering overpayments made to True Heath pre-petition. Those overpayments constitute pre-petition unsecured claims. The Bankruptcy Code provides a method for the Defendants to make a claim, along with other pre-petition unsecured creditors, to recover on those pre-petition claims. The balance of the equities, therefore, lies with True Health and its estate.

Finally, the Defendants argue that allowing True Health to liquidate would not have any impact on the public interest. The Court disagrees. Congress has established a system under the Bankruptcy Code that favors the ability of companies to restructure rather than liquidate. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 343 (3rd Cir. 2006) ("An approach that results in unnecessary liquidations is neither fair nor consistent with the Bankruptcy Code's preference for reorganization."); *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1354 (9th Cir. 1994) (Congress' purpose in enacting the Bankruptcy Code was to "establish a preference for reorganizations"). Certainly, the creditors of True Health will benefit from the ability of the company to market and sell itself as a going concern rather than being sold in a fire sale liquidation. In addition, several hundred employees may be able to keep their jobs in a going concern sale that would not occur in a liquidation. The Court also disagrees with the Defendants' argument that liquidation would have no impact on patient care. There are perhaps thousands of patient samples that are either on their way to or are waiting testing by True Health's labs. Not just Medicare patients, but private pay

11

patients as well.  If forced to stop testing and liquidate, those patients would have to resubmit samples to other labs, thus delaying their results.  That delay, even if only a few days, could potentially have serious implications for some patients.  Therefore, continuing to operate as a going concern, providing healthcare services, serves the public's interest.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant True Health's Motion to enforce the automatic stay preventing the Defendants from withholding post-petition Medicare reimbursement payments to True Health.  The Court will enter an order giving effect to this ruling.

Dated:  August 29, 2019

JOHN T. DORSEY, U.S.B.J.