## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THG Holdings LLC, *et al.*, | Case No. 19-11689 (JTD) |
| Debtors.[1] | Jointly Administered |
| | Re: D.I. 16, 175 |

## ORDER (I) APPROVING PURCHASE AGREEMENT AMONG DEBTORS AND PURCHASER, (II) AUTHORIZING SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**"),[2] dated July 30, 2019 [Docket No. 16], of the above-captioned debtors and debtors in possession (the "**Debtors**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for an order authorizing and approving the sale of the Acquired Assets and the assumption and assignment of certain executory contracts of the Debtors in connection therewith; and the Court having taken into consideration this Court's prior order, dated August 22, 2019 [Docket No. 175] (the "**Bidding**

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: THG Holdings LLC (8292); True Health Group LLC (9158); True Health Clinical LLC (5272); True Health Diagnostics LLC (9452); True Health IP LLC (5427); Outreach Management Solutions LLC d/b/a True Health Outreach (9424); Health Core Financial LLC d/b/a True Health Financial (6614). The Debtors' mailing address is 3803 Parkwood Blvd., Suite 400, Frisco, Texas 75034.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below) or, if not defined in the Purchase Agreement, the meanings given to them in the Sale Motion.

**Procedures Order**"), approving bidding procedures for the sale of the Acquired Assets (the "**Bidding Procedures**") and granting certain related relief; and Cleveland Heartlab, Inc., a Delaware corporation (the "**Purchaser**"), a wholly-owned subsidiary of Quest Diagnostics Incorporated, having submitted the highest and best bid for the Acquired Assets and having thus been designated the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets; and this Court having conducted a hearing to consider the Sale Transaction (as defined below) on September 20, 2019 (the "**Sale Hearing**"), during which time all interested parties were offered an opportunity to be heard with respect to the Sale Transaction; and this Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the *Asset Purchase Agreement*, dated as of September 18, 2019 (together with exhibits and schedules thereto, as may be further amended, modified, supplemented and/or restated as provided therein) (the "**Purchase Agreement**") by and between the Debtors and Purchaser, a copy of which is attached hereto as **Exhibit A**, whereby the Debtors have agreed, among other things, to sell the Acquired Assets to Purchaser, on the terms and conditions set forth in the Purchase Agreement (the "**Sale Transaction**"), (iii) the *Declaration of Clifford A. Zucker in Support of First Day Relief* [Docket No. 5] (the "**First Day Declaration**"), the *Declaration of J. Scott Victor in Support of the Sale of Certain Assets of Debtors* [Docket No. 265] (the "**Victor Declaration**"), and the *Declaration of Clifford A. Zucker in Support of the Sale of Certain Assets of Debtors* [Docket No. 264], (the "**Zucker Declaration**" and, collectively with the First Day Declaration and the Victor Declaration, the "**Sale Declarations**"), and (iv) the arguments of counsel made, and the evidence proffered and adduced, at the Sale Hearing; and due notice of the Sale Motion and the form of this Order (the "**Proposed Sale Order**") having been provided; and all objections to the Sale Transaction and the Proposed Sale Order having been withdrawn,

resolved, or overruled; and it appearing that the relief granted herein is in the best interests of the

Debtors, their estates, creditors, and all parties in interest in these chapter 11 cases; and upon the

record of the Sale Hearing and these chapter 11 cases; and after due deliberation and sufficient

cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute

this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such. To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction and Venue**. This Court has jurisdiction to decide the Sale Motion

and over the Sale Transaction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing

Order of Reference from the United States District Court for the District of Delaware*, dated as

of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue of these chapter 11 cases and the Sale Motion in this District is proper under 28 U.S.C. §§

1408 and 1409.

C.    **Statutory and Rule Predicates**. The statutory and other legal predicates for the

relief granted herein are sections 105(a), 363, 365, and 541 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1 and 6004-1.

D.    **Opportunity to Object**. A fair and reasonable opportunity to object to, and be

heard with respect to, the Sale Motion and the Sale Transaction has been given to all Persons

entitled to notice pursuant to the Bidding Procedures Order, including, but not limited to, the

following: (i) all entities known or reasonably believed to have asserted any lien, claim,

encumbrance, or other interest in the Acquired Assets; (ii) all affected federal, state and local regulatory and taxing authorities; (iii) all parties known or reasonably believed to have expressed interest in the Acquired Assets; (iv) all parties to the Assigned Contracts, and (v) all of the Debtors' known creditors (for whom identifying information and addresses are available to, or reasonably attainable by, the Debtors); and (v) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. With respect to Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice in *U.S.A. Today* on August 29, 2019, was sufficient and reasonably calculated under the circumstances to reach such persons. *See* [Docket No. 208].

E.      **Final Order**.   This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

F.      **Sound Business Purpose**.   The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder, and approval of the Sale Transaction. The Debtors' entry into and performance under the Purchase Agreement (i) constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties, (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Purchase Agreement constitutes the highest or best offer received for the Acquired Assets; (ii) the Purchase Agreement presents the best opportunity to maximize the value of the Acquired Assets;

and (iii) the value of the Debtors' estates will be maximized through the sale of the Acquired Assets pursuant to the Purchase Agreement.

G.    **Compliance with Bidding Procedures Order**.    The Debtors and Purchaser complied with the Bidding Procedures Order and the Bidding Procedures in all respects. Purchaser subjected its bid to the competitive Bidding Procedures approved by this Court and was designated the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order and Bidding Procedures.    The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Acquired Assets.

H.    **Marketing Process**.    (i) The Debtors and their advisors, including investment banker SSG Advisors, LLC, engaged in a robust and extensive marketing and sale process pursuant to the Bidding Procedures Order and Bidding Procedures, (ii) the Debtors conducted a fair and open sale process, (iii) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets, and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures obtained the highest or best value for the Acquired Assets, and any other transaction would not have yielded as favorable an economic result for the Debtors and their estates with respect to the Acquired Assets.

I.    **Fair Consideration; Highest or Best Value.**    The consideration to be provided by Purchaser under the Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia. Such consideration constitutes the highest and best bid for the Acquired Assets. No other person or entity, or group of persons or entities, has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors than Purchaser, including through the reduction of claims against the Debtors' estates.

J.      **No Successor or Other Derivative Liability**. (i) Purchaser is not, and the consummation of the Sale Transaction will not render Purchaser, a mere continuation, and Purchaser is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between Purchaser and the Debtors; (ii) the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Purchaser with or into any of the Debtors or their estates; and (iii) Purchaser is not, and shall not be deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of the Sale Transaction.

K.      **Good Faith**. The Purchase Agreement and the Sale Transaction were negotiated, proposed, and entered into by the Debtors and Purchaser in good faith, without collusion, and from arm's-length bargaining positions. Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Effective upon the Closing, it shall be judicially determined that neither the Debtors nor Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Effective upon the Closing, it shall be judicially determined that neither Purchaser nor any of its members, partners, officers, directors, principals, or shareholders is an

"insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code and no common identity of incorporators, directors, or controlling stockholders exists between Purchaser and the Debtors. The Purchase Agreement and any agreements, documents or other instruments entered into pursuant thereto or in connection therewith (collectively, the "**Transaction Documents**") were not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. All payments to be made by Purchaser in connection with the Sale Transaction have been disclosed. Neither the Debtors nor Purchaser is entering into the Transaction Documents, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Colombia.

L.    **Notice**. As evidenced by the certificates of service filed with this Court: (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the bidding process (including the deadline for submitting bids and the Auction), the Sale Hearing, the Sale Transaction, and the Proposed Sale Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, or the Proposed Sale Order is required.

M.    **Cure Notice**. As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice of the Debtors' intent to assume and assign the Assigned Contracts and of the related proposed cure amounts (the "**Cure Costs**") upon each non-Debtor party to the Assigned

Contracts (the "**Cure Notice**"). The service of the Cure Notice was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Assigned Contracts. All non-Debtor parties to the Assigned Contracts have had a reasonable opportunity to object both to the Cure Costs listed on the Cure Notice and to the assumption and assignment of the Assigned Contracts to Purchaser. No defaults exist in the Debtors' performance under the Assigned Contracts as of the date of this Order other than the failure to pay the Cure Costs, as may be required, or such defaults that are not required to be cured.

N.     **Satisfaction of Section 363(f) Standards**. The Debtors are authorized to sell the Acquired Assets to Purchaser free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), property interests, rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets, including, without limitation, any debts, claims, rights, causes of action, and/or suits arising under or out of, in connection with, or in any way relating to, any acts, omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, and/or claims for taxes of or against the Debtors and/or the Acquired Assets, and any derivative, vicarious, transferee, or successor liability claims, rights, or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior or subsequent to the commencement of these chapter 11 cases, whether secured or unsecured, senior or subordinated, matured or unmatured, known or unknown, whether fixed or contingent, whether anticipated or unanticipated, whether yet accrued or not, and whether imposed by agreement, understanding, law, equity or otherwise arising under

8

or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' business before the Closing, or the transfer of the Debtors' interests in the Acquired Assets to Purchaser, all Excluded Assets, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion are deemed to have consented to the Debtors' entry into the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object that have an interest in the Acquired Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Acquired Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors. All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Claims against Purchaser, its Affiliates, successors, assigns, assets (including Acquired Assets), and/or properties.

O.       Subject to the provisions of Paragraph 11 below, (a) each of the DIP Lenders and DIP Agent under that certain Secured Superpriority Debtor-In-Possession Credit Agreement, dated September 11, 2019, by and among the Debtors and the DIP Agent and DIP Lenders thereunder (as such agreement may be amended, restated, amended and restated, supplemented or otherwise modified from time to time), (b) each of the Prepetition First Lien Administrative

Agent and lenders under that certain Credit Agreement, dated January 27, 2019, by and among the Debtors and the Prepetition Secured Parties [3] (as such agreement may have been amended, restated, amended and restated, supplemented or otherwise modified from time to time), and (c) each of the Prepetition Second Lien Administrative Agent and Prepetition Second Lien Lenders (collectively, with the DIP Lenders, DIP Agent, and the Prepetition Secured Parties, the "**Secured Lenders**") under that certain Amended and Restated Second Lien Promissory Note, dated November 21, 2018 has consented to the sale of the Acquired Assets to Purchaser pursuant to the Transaction Documents free and clear of any Claims of such Secured Lender against the Acquired Assets.

P.     Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale Transactions, thus adversely affecting the Debtors and their estates and their creditors, if the sale of the Acquired Assets was not free and clear of all Claims, or if Purchaser would, or in the future could, be liable for any such Claims.  A sale of the Acquired Assets, other than one free and clear of all Claims, would yield substantially less value for the Debtors' estates.

Q.     The total consideration to be provided under the Purchase Agreement reflects Purchaser's reliance on this Order to provide Purchaser, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets free and clear of all Claims.

R.     **Assumption and Assignment of Assigned Contracts**.  The assumption and assignment of the Assigned Contracts are integral to the Purchase Agreement, are in the best

---

[3] As such term is defined in the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364,* entered on September 10, 2019, [Docket No. 233] (the "**Final DIP Order**").

interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment. Specifically, the assumption and assignment of the Assigned Contracts (i) is necessary to sell the Acquired Assets to Purchaser, (ii) limit the losses suffered by non-Debtor parties to the Assigned Contracts, and (iii) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts.

S.    With respect to each of the Assigned Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code. Further, Purchaser has cured or will cure on or before the Closing any monetary default required to be cured with respect to the Assigned Contracts under section 365(b)(1) of the Bankruptcy Code and has provided adequate assurance of future performance under the Assigned Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-Debtor parties to such Assigned Contracts. Accordingly, the Assigned Contracts may be assumed by the Debtors and assigned to Purchaser as provided for in the Purchase Agreement and herein.

T.    **Validity of Transfer**. As of the Closing, the transfer of the Acquired Assets to Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, will vest Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

U.      The Debtors (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary action of the Debtors, (ii) have all of the power and authority necessary to consummate the Sale Transaction, and (iii) upon entry of this Order, other than any consents identified in the Purchase Agreement (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Sale Transaction.

V.      The Acquired Assets constitute property of the Debtors' estates and good title to the Acquired Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

W.      The Purchase Agreement is a valid and binding contract between the Debtors and Purchaser and shall be enforceable pursuant to its terms.  The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale Transaction, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

X.      **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and Purchaser intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound

business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Order.

Y.      **Legal and Factual Bases**.  The legal and factual bases set forth in the Sale Motion, the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT**:

1.      **Motion is Granted**.  The Sale Motion and the relief requested therein is granted and approved as set forth herein.

2.      **Objections Overruled**.  All objections, if any, and any and all joinders thereto, to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived, or settled as announced to this Court at the Sale Hearing, by stipulation filed with this Court, or as provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.

3.      **Notice.**  Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4.      **Fair Purchase Price.**  The consideration provided by Purchaser under the Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration

and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

5. **Approval of Purchase Agreement**. The Transaction Documents, and the Sale Transaction, and all of the terms and conditions thereof, are hereby approved in their entirety. The failure specifically to include any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Transaction Documents, and the Debtors' entry therein, be authorized and approved in their entirety.

6. **Consummation of Sale Transaction**. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Transaction Documents and to consummate the Sale Transaction, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Transaction Documents and this Order. For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Purchaser in accordance with the Transaction Documents and this Order.

7. The Debtors, their Affiliates, and their respective officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, including the transfer and, as applicable, the assignment of all the Acquired Assets, and the assumption and assignment of the Assigned

Contracts, and to take all further actions as may be (i) reasonably requested by Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser, or reducing to Purchaser's possession, the Acquired Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Transaction Documents, all without further order of this Court.

8.      All Persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to Purchaser as of the Closing.

9.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

10.      **Transfer of Assets Free and Clear**.  Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized, empowered, and directed to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement and the terms of this Order.  The Acquired Assets shall be transferred to Purchaser and, upon the Closing, such transfer shall: (i) be valid, legal, binding, and effective; (ii) vest Purchaser with all right, title, and interest of the Debtors in the Acquired Assets; and (iii) be free and clear of all Claims in accordance with section 363(f) of the Bankruptcy Code, with any and all Claims that represent interests in property to attach to the net proceeds of the Sale Transaction, in the same amount and order of their priority, with the same extent, validity, force and effect which they have against the Acquired Assets, and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing.

11.     Notwithstanding clause (iii) of Paragraph 10 above, or any other contrary provision of this Order, upon Closing, subject to payment of (a) the 2018 and 2019 personal property taxes from the City of Richmond  in the principal amount of $607,620.27, plus allowed interest and fees, and (b) the transaction fee to SSG Advisors, LLC, set forth in paragraph 25 of this Order, all cash proceeds of the Sale Transaction shall be paid directly to the DIP Agent for the benefit of the DIP Lenders and the Prepetition Secured Parties in accordance with this Court's Final DIP Order.  Subject to the adoption of the Approved Budget, cash proceeds of the Sale Transaction shall be applied first to the DIP Obligations and, thereafter, to the Prepetition Senior Obligations; provided, however, the rights of the Creditors' Committee and other parties in interest to assert a Challenge to the Prepetition Senior Obligations as provided for in the Final DIP Order shall not be affected by this Order.

12.     Except as otherwise provided in the Purchase Agreement, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors who may or do hold Claims against the Debtors, the Acquired Assets, and/or the Debtors' business, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties, including, without limitation, taking any of the following actions with respect to any Claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties;  (ii) enforcing, attaching, collecting, or

recovering in any manner any judgment, award, decree, or order against Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (iii) creating, perfecting, or enforcing any Claim against Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (iv) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof. No such Person shall assert or pursue against the Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties any such Claim.

13.    This Order (i) shall be effective as a determination that all Claims, have been unconditionally released, discharged and terminated as to the Purchaser and the Acquired Assets, and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Acquired Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**"). All Recording Officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Acquired Assets recorded prior to the date of this Order. A certified copy of this Order may

be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Acquired Assets recorded prior to the date of this Order. All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

14.     Following the Closing, no holder of any Claim shall interfere with Purchaser's title to or use or enjoyment of the Acquired Assets based on or related to any Claim or based on any actions or omissions by the Debtors, including any actions or omissions the Debtors may take in these chapter 11 cases.

15.     Except as expressly set forth in the Purchase Agreement, Purchaser and each of its Affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever for any Claims, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Purchaser's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Claims based on, relating to, and/or arising under, without limitation: (i) the Debtors' business operations or the cessation thereof; (ii) any litigation involving one or more of the Debtors; (iii) any antitrust laws; (iv) any product liability or similar laws, whether state, federal, or otherwise; (v) any bulk sales or similar laws; (vi) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, and/or any other theory of or related to successor liability.

16.     If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims against the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests which the Person has with respect to the Debtors or the Acquired Assets, then with regard to the Acquired Assets that are purchased by Purchaser pursuant to the Purchase Agreement and this Order (i) the Debtors are hereby authorized to execute and file such statements, instruments, or releases on behalf of the Person with respect to the Acquired Assets and (ii) Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets; *provided that*, notwithstanding anything in this Order to the contrary, the provisions of this Order shall be self-executing, and neither the Sellers nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, other than as required by the Purchase Agreement. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

17.     On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired under the Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Acquired Assets to the Purchaser.

18.     To the maximum extent available under applicable law and to the extent provided for under the Purchase Agreement, Purchaser shall be authorized, as of the Closing, to operate

under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets and, to the maximum extent available under applicable law and to the extent provided for under the Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing. All existing licenses or permits applicable to the business shall remain in place for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

19. **No Successor or Other Derivative Liability**. By virtue of the Sale Transaction, neither Purchaser nor any of its Affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to any of the Debtors under any theory of law or equity; (ii) have, *de facto* or otherwise, merged with or into any or all Debtors or their estates; (iii) have a common identity or a continuity of enterprise with the Debtors; or (iv) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtors or any business, enterprise, or operation of the Debtors. Upon the Closing, to the maximum extent available under applicable law, Purchaser's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the time of the Closing and the Acquired Assets shall not be subject to any Claims arising under or in connection with any Excluded Asset or Excluded Liability. The operations of Purchaser and its Affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Acquired Assets.

20. **Assumption and Assignment of Assigned Contracts**. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and

assign the Assigned Contracts to Purchaser free and clear of all Claims, and to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Purchaser as provided in the Purchase Agreement. Upon the Closing, Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors in, to, and under the Assigned Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts. Purchaser acknowledges and agrees that, from and after the Closing, it shall comply with the terms of each assumed and assigned contract in its entirety, including any indemnification obligations expressly contained in such Assigned Contract that could arise as a result of events or omissions that occur from and after the Closing.

21.     All Cure Costs that have not been waived shall be determined in accordance with the Bidding Procedures Order or other applicable order of this Court and paid by Purchaser in accordance with the terms of the Purchase Agreement. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Assigned Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Each non-Debtor party to the Assigned Contracts is forever barred, estopped, and permanently enjoined from asserting against the Debtors or against Purchaser, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing. Purchaser has provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have

been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Purchaser, of each of the Assigned Contracts.

22.    To the extent a non-Debtor party to the Assigned Contracts fails to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor party shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  Consistent with the Bidding Procedures Order, the non-Debtor party to an Assigned Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the Purchase Agreement, is hereby enjoined from taking any action against Purchaser with respect to any claim for cure under the Assigned Contract.  To the extent no timely objections to adequate assurance or the cure amounts have been filed and served with respect to an Assigned Contract, the non-Debtor party to such Assigned Contract is deemed to have consented to the assumption and assignment of the Assigned Contract to Purchaser.

23.    **Ipso Facto Clauses**.  Except as otherwise specifically provided for by order of this Court, the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, including all rights of Purchaser as the assignee of the Assigned Contracts, notwithstanding any provision in any such Assigned Contract (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  There shall be no, and all non-Debtor parties to any Assigned Contract are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any defaults, breach, claim, pecuniary loss, rent accelerations, escalations, assignment fees, increases,

or any other fees charged to Purchaser or the Debtors as a result of the assumption or assignment of the Assigned Contracts.

24.    Except as otherwise specifically provided for by order of this Court, upon the Debtors' assignment of the Assigned Contracts to Purchaser, no default shall exist under any Assigned Contracts, and no non-Debtor party to any Assigned Contracts shall be permitted to declare a default by any Debtor or Purchaser, or otherwise take action against Purchaser, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contracts.  Any provision in an Assigned Contract that prohibits or conditions the assignment or sublease of such Assigned Contract (including without limitation, the granting of a lien therein) or allows the non-Debtor party thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any of the Assigned Contracts shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

25.    **Payment of Sale Fee**.  Pursuant to the Order Authorizing Debtors to Employ and Retain SSG Advisors, LLC, as Investment Banker Nunc *Pro Tunc* to the Petition Date (D.I. 199), the Transaction Fee of $400,000 to be paid to SSG Advisors, LLC shall be paid directly from the proceeds of the Sale at Closing.

26.    **Statutory Mootness**.  The Sale Transaction is undertaken by Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction

shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Assets to Purchaser free and clear of Claims, unless such authorization is duly stayed before the Closing pending such appeal.

27.    **No Avoidance of Purchase Agreement**.  Neither the Debtors nor Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Transaction Documents and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Transaction Documents or the Sale Transaction.

28.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and Purchaser intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal being foreclosed as moot.

29.    **Allowance of Claims Affecting Purchaser**.  The Debtors shall not consent or agree to the allowance of any claim to the extent that it would constitute an Assumed Liability without the prior written consent of Purchaser.  Purchaser shall have standing in these chapter 11 cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it

would otherwise constitute an Assumed Liability, and this Court will retain the right to hear and determine such objections. Purchaser shall pay or otherwise satisfy the Assumed Liabilities on or before the later of: (i) the date on which such liability becomes due and owing to the holder of same in the ordinary course of business; and (ii) the date on which the Purchaser and the holder agree such liability is to be satisfied.

30.    **Exculpation and Release of Purchaser.**   Except with respect to Purchaser's obligations under this Order or the Transaction Documents, effective upon the Closing, and to the maximum extent available under applicable law, neither Purchaser nor any of its Affiliates, successors, assigns, members, partners, officers, directors, principals, shareholders, advisors, or representatives shall have or incur any liability to, or be subject to any action by, the Debtors, their estates, or any of their predecessors, successors or assigns, arising from, based on, or related in any way to the negotiation, documentation, or due diligence in respect of, performance, or consummation of the Transaction Documents, the Debtors, their estates, and the conduct of their business prior to closing, and the entry into and consummation of the Sale Transaction.

31.    **Binding Effect of this Order**.   The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Purchaser and its Affiliates, successors, and assigns, and any affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, or receiver. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding

under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Transaction Documents and (ii) perform under the Transaction Documents without the need for further order of this Court.

32.   **Reservations of Rights Regarding U.S. Government Agreements**. Notwithstanding any provision to the contrary in the Sale Motion, this Order, and any implementing Sale documents, nothing in the Sale Motion, this Order, and any implementing Sale documents shall: (1) authorize or effectuate the assumption, sale, assignment or other transfer to the Purchaser of any grants, grant funds, contracts, property, receivables, leases or agreements of or with the federal government, (collectively, "**Federal Interests**"), including without limitation Debtors' Medicare Part B supplier agreement; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) subject to Section 553 of the Bankruptcy Code, affect the government's rights, if any, to offset or recoup any amounts due under, or relating to, the Federal Interests; (4) waive any obligation of the Debtors or any Purchaser or any other entity to comply with applicable legal requirements and approvals under any police or regulatory laws governing the transfer or assignment of, or compliance with, any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval; (5) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity may be subject to as the post-sale owner or operator of property after the date of entry of this Order; or (6) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States Code). Nothing in this

paragraph is intended to or shall affect or impact the Debtors or CMS's arguments in the adversary proceeding captioned *True Health Diagnostics, LLC v. Azar, et. al.*, Adv. Proc. No. 19-50280 (Bankr. D. Del.) or the related appeal captioned *United States of America v. True Health Diagnostics*, C.A. No. 19-1714 (D. Del.).  All parties reserve all rights and defenses under applicable law.

33.    **Cigna Reservation**.  Notwithstanding anything in this Order to the contrary, neither the Cigna ASA nor the Cigna Settlement Agreement (each as defined in the Cigna Objection [D.I. 247]) shall be deemed Assigned Contacts for purposes of this Order.

34.    **Anthem Reservation**.  Notwithstanding anything in this Order to the contrary, no agreements involving the Anthem Entities (as defined in their objection [D.I. 257]) shall be deemed Assigned Contacts for purposes of this Order.

35.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of (i) the Purchase Agreement or (ii) any other order of this Court, the terms of this Order shall control.  Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order, and, to the extent that there is any conflict among them, the terms of the Purchase Agreement and/or this Order, as applicable, shall control.

36.    **Modification of Purchase Agreement**.    Subject to the terms therein, the Transaction Documents may be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof, without further order of this Court; *provided* that notwithstanding any such modification, amendment, or supplement, the sale

LS Biotech 8, LLC Reservation. Notwithstanding anything in this Order to the contrary, the Lease (as defined in the LS Biotech 8 Objection [D.I. 246]) shall not be deemed an Assigned Contract for purposes of this Order.

27

of the Acquired Assets to Purchaser will still comply with the requirements of section 363 of the Bankruptcy Code.

37.     **Bulk Sales**.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

38.     **Automatic Stay**.  Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

39.     **Provisions Non-Severable**.  The provisions of this Order are nonseverable and mutually dependent.

40.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, (i) interpret, enforce, and implement the terms and provisions of this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (ii) adjudicate disputes related to this Order and the Transaction Documents (including all amendments thereto, and any waivers and consents thereunder).

Dated: September 26, 2019
      Wilmington, Delaware

THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE